*IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO*

| | |
|---|---|
| JAMES ROY O'NEILL, | ) Case Nos. 2:13-CV-00352-EJL |
| Petitioner, | ) 2:10-CR-00160-EJL |
| vs. | ) MEMORANDUM DECISION |
| UNITED STATES OF AMERICA, | ) AND ORDER |
| Respondent. | ) |

Pending before the Court in the above-entitled matter is James Roy O'Neill's ("O'Neill") Petition to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Dkts. 1, 7). The Government has filed a motion to dismiss the § 2255 petition (Dkt. 3), and O'Neill has responded (Dkt. 6.) Having reviewed the record, including the record in the underlying criminal case, the Court will deny the § 2255 petition.

## BACKGROUND

On April 21, 2011, O'Neill was sentenced to the Bureau of Prisons for a period of 180 months for conspiracy to distribute controlled substances and conspiracy to launder money. (2:10-cr-00160, Dkt. 253). Law enforcement investigators initially became aware of O'Neill's drug trafficking activities some time in 2009. (2:10-cr-00160, Dkt. 138, pp. 6-7.) With the assistance of a

confidential informant, investigators purchased cocaine from O'Neill on six occasions between September 2009 and March 2010. (*Id*., p. 6.) Through these purchases, extensive surveillance, and interviews of witnesses, law enforcement learned that O'Neill was being supplied cocaine by Manuel Rivera of Kennewick, Washington, and that other individuals in the Coeur d'Alene area were assisting O'Neill in the distribution of cocaine and/or the manufacturing and distribution of marijuana. (*Id*.) Law enforcement also learned that O'Neill supplied cocaine to a co-conspirator in exchange for the use of the co-conspirator's property as a stash house for drugs. (*Id*.) O'Neill also used this location to start marijuana plants, which he later re-planted on public lands. (*Id*.) On twelve occasions between July 2009 and April 2012, trace amounts of cocaine and/or marijuana, as well as paraphernalia consistent with drug trafficking, were found in the trash at O'Neill's residence. (*Id*., p. 7.)

During the course of the conspiracy, O'Neill fronted cocaine to a co-defendant, and had this co-defendant serve O'Neill's customers when he was out of town. (*Id*., 8-9.) O'Neill also involved his wife, Lecia O'Neill, in his criminal activity. She assisted him by contacting co-conspirators, depositing cash into O'Neill accounts, and endorsing checks written as payment for drug purchases. (*Id*.). On at least one occasion, Ms. O'Neill also transported cash to her husband's cocaine source in order to pay for the drugs. (*Id*.) A financial investigation involving O'Neill and his wife revealed that the couple did not have sufficient

MEMORANDUM DECISION AND ORDER -- 2

legitimate income to support their lifestyle. (*Id.*) For instance, while O'Neill's total reported earnings from 1998 to the second quarter of 2009 was only $3,060, deposits amounting to approximately $200,000 were made into O'Neill bank and investment accounts during the period between February 2004 and February 2010. (*Id.*)

On May 25, 2010, a federal search warrant was served on the O'Neill residence in Coeur d'Alene, Idaho. (2:10-cr-00160, Presentence Investigation Report "PSR", p. 6, ¶ 14.) During the search, investigators found a safe containing $7,432 in cash, cocaine, several rifles, and two handguns, one of which was a loaded .45 caliber pistol. (*Id.*)

On October 25, 2010, O'Neill pled guilty to Conspiracy to Distribute Cocaine and Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h). (2:10-cr-00160, Dkt. 156.) The plea was pursuant to a written Rule 11 plea agreement between O'Neill and the Government. (2:10-cr-00160, Dkt. 138.) Within the plea agreement, O'Neill admitted to distributing five or more kilograms of cocaine and to conspiring with others to distribute drugs and to launder money. (*Id.*, pp. 6-9.)

O'Neill's plea agreement set forth the nature of his charges, as well as the elements and factual basis the Government would be required to prove to support convictions on both counts. The plea agreement set forth the maximum and

minimum penalties O'Neill could face under the relevant statutes (a minimum of ten years and maximum of life on the conspiracy to distribute controlled substances charge, and a maximum of twenty years on the conspiracy to launder money charge.) (*Id.*, p. 10.) O'Neill also specifically agreed to a two-point firearms enhancement in his plea agreement due to his possession of firearms.[1] (*Id.*, p. 19.)

      O'Neill was sentenced on April 18, 2011. (2:10-cr-00160, Dkt. 248.) Citing the PSR language and the plea agreement, the Government argued at sentencing that O'Neill's conduct supported a three-level upward adjustment for his aggravated role in the offense, and recommended a 240-month sentence. (2:10-cr-00160, Dkt. 297, pp. 22-33.) O'Neill contested the upward adjustment, and argued his conduct did not support an upward departure for an aggravated role and that he did not possess a firearm in connection with his offense. (*Id.*, pp. 44-48.) O'Neill asked the Court to apply the safety-valve provision of 18 U.S.C. § 3553(f), and sentence him to the statutory mandatory minimum of ten years. (*Id.*, p. 48.) This Court determined the safety-valve did not apply because O'Neill possessed a firearm in connection with the offense. (*Id.*, pp. 58-59.) However, the Court did reduce the role adjustment from the three-levels recommended by the Government to two-levels, explaining it would give O'Neill the benefit of the doubt. (*Id.*) Due to the smaller role adjustment, the Court held the sentencing guideline

---

1  During the change of plea hearing, O'Neill also stated that he understood he was agreeing to a two-level weapon enhancement. (2:13-cv-00352, Dkt. 3-1, p. 22.)

MEMORANDUM DECISION AND ORDER -- 4

range for O'Neill was 188-235 months. (*Id.*, p. 59.) The Court ultimately sentenced O'Neill below the range, to a total of 180 months for each count, to be served concurrently. (*Id.*, p. 60.)

After sentencing, O'Neill appealed the Court's judgment to the Ninth Circuit Court of Appeals. On appeal, O'Neill argued that this Court erred: (1) by giving him a two-level increase pursuant to U.S.S.G. § 3B1.1(b) for having a leadership role; (2) by not applying the safety valve provision of 18 U.S.C. § 3553(f); (3) in calculating O'Neill's criminal history because it considered a judgment that O'Neill argued was sealed in state court; and (4) by not granting O'Neill a sentencing continuance. (Ninth Circuit Court of Appeals 11-30106, Dkt. 8, pp. 6-20.) The Ninth Circuit dismissed O'Neill's appeal, holding that O'Neill "knowingly and voluntarily waived his right to an appeal" and that O'Neill's appeal did "not fall within the plea waivers exceptions." *United States v. O'Neill*, 475 Fed.Appx. 235, 236 (2012).

O'Neill filed the instant § 2255 petition on August 12, 2013. (2:13-cv-00352, Dkt. 1.) In his motion, O'Neill again argues that the Court erred by finding he had a leadership role in the offense, and in finding that he used a firearm in connection with his offense. (*Id.*, pp. 14-15.) As such, O'Neill suggests the Court erred in finding him disqualified from the safety-valve.[2] O'Neill also

---

2 The "safety-valve" provision of 18 U.S.C. § 3553(f) requires a district court to impose a sentence "without regard to any statutory minimum sentence" if five factors are met, and

MEMORANDUM DECISION AND ORDER -- 5

suggests his attorney, David Dokken, was ineffective for failing to contest the Government's use of a warrantless GPS device during their drug investigation. (*Id*., p. 7; Dkt. 6, p. 2.)

## LEGAL STANDARD

Under 28 U.S.C. § 2255, there are four grounds for a court to grant relief to a prisoner who challenges the length of his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). Although there are four

---

provides for a two-level decrease in the defendant's base offense level if such factors are met. *U.S. V. Rangel-Guzman*, --- F.3d ---, 2014 WL 2198583 (9th Cir. 2014). The five factors are:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines…; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

categories, the claims that fall within the scope of § 2255 are minimal. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). A motion filed pursuant to § 2255 must allege specific facts which, if true, would entitle the individual to relief. *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

A federal district court must dismiss a § 2255 petition "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. § 2255, Rule 4(b). If the court does not dismiss pursuant to Rule 4(b), the court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id*.

The court may also dismiss the § 2255 petition at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254. If the court does not dismiss the proceeding, then the court can determine if an evidentiary hearing is necessary. *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir.1994). Generally, a prisoner seeking relief in a motion to vacate bears the burden of demonstrating entitlement to relief or to an evidentiary hearing by a preponderance of the evidence. *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992). An evidentiary hearing is not needed in a § 2255 case when facts can be

MEMORANDUM DECISION AND ORDER -- 7

determined from evidence in the record and prior testimony. *Frazer*, 18 F.3d at 781.

Here, an evidentiary hearing is not required because O'Neill waived his right to appeal the sentence imposed by this Court. Thus, even assuming that the Court's failure to apply § 3553(f) was in error, O'Neill waived his right to appeal the Court's sentence. O'Neill's arguments with respect to ineffective assistance of counsel are also without merit, as the Ninth Circuit has held that GPS evidence obtained by law enforcement should not be suppressed where, as here, the binding legal precedent at the time a GPS search was employed permitted its use. *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090 (9th Cir. 2012).

## ANALYSIS

*1. Timeliness*

There is a one year limitation on the filing of a § 2255 motion. Section 2255 states in part:

> A 1-year period of limitations shall apply to a motion under this section. The limitation period shall run from the latest of—
> (1) the date on which the judgment of conviction became final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2255(f).

In this case, O'Neill was sentenced on April 18, 2011. (2:10-cr-00160, Dkt. 248.) The Judgment was entered on April 21, 2011. (*Id.*, Dkt. 253.) O'Neill filed a direct appeal to the Ninth Circuit Court of Appeals on April 29, 2011. (*Id.*, Dkt. 258.) The Ninth Circuit issued its decision dismissing O'Neill's appeal on August 13, 2012. *United States v. O'Neill*, 475 Fed.Appx. 235 (9th Cir. 2012). O'Neill did not file a petition for writ of certiorari. On August 12, 2013, less than one year after the time for seeking certiorari expired, O'Neill filed his Motion to Vacate under 28 U.S.C. § 2255. (2:10-cr-00160, Dkt. 369.) O'Neill's petition was accordingly timely filed within one year from the date the Judgment became final. *Clay v. United States*, 537 U.S. 522, 527 (2003) (a judgment becomes final for purpose of starting the clock on § 2255's one-year limitation period when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction).

2. *Waiver*

A waiver is enforceable if it is knowing and voluntary and the language of the waiver covers the grounds raised on appeal. *United States v. Bibler*, 495 F.3d 621, 623-24 (9th Cir. 2007). Knowing and voluntary waivers of appellate rights in criminal cases are regularly enforced. *United States v. Anglin*, 215 F.3d 1064, 1066

(9th Cir. 2000). The proper enforcement of appeal waivers serves "an important function in the judicial administrative process by 'preserv[ing] the finality of judgments and sentences imposed pursuant to valid plea agreements." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) (quoting *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992)).

To determine whether a particular waiver was made "knowingly and voluntarily," a court looks to the circumstances surrounding the signing and entry of the plea agreement, as well as to whether the district court informed the defendant of his appellate rights and verified his intent to forfeit them. *United States v Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). The scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement. *Id*.

In his § 2255 motion, O'Neill suggests he was "unaware of the ramifications of his plea agreement" and was unaware he had waived his right to appeal. (2:13-cv-00352, Dkt. 1, p. 2.) However, in the plea agreement, O'Neill expressly agreed that his plea was "voluntary and did not result from force, threats, or promises[.]" (2:10-cr-00160, Dkt. 138, p. 2.) O'Neill also specifically agreed to waive "any right to appeal or to collaterally attack the conviction, entry of judgment and sentence." (*Id.*, p. 22.) O'Neill acknowledged that this waiver would "result in the dismissal of any appeal or collateral attack [he] might file challenging the plea, conviction or sentence in this case." (*Id.*) O'Neill also agreed to waive his

MEMORANDUM DECISION AND ORDER -- 10

right to collaterally attack his judgment, conviction and sentence through a § 2255 motion, except in three limited circumstances. Such circumstances were if the sentence imposed by the District Court exceeded the statutory maximum; if the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5k of the Guidelines; or if the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeded the advisory Sentencing Guidelines range as determined by the District Court. (*Id.*, pp. 21-22.) None of these exceptions are applicable here, as the sentence imposed by the Court was below the statutory maximum, the Court did not depart upward, and the sentence the Court imposed was below the Sentencing Guideline range.

During his change of plea hearing, O'Neill also acknowledged that he had gone over his plea agreement "very carefully" with his counsel and that he understood the entire agreement. (2:13-cv-00352, Dkt. 3-1, pp. 6-7.) O'Neill was also advised of his constitutional rights, including the right to appeal, and instructed "[b]y entering pleas of guilty, you are waiving each and every one of those constitutional rights except for representation by counsel[.] (*Id.*, p. 15.) O'Neill stated he understood his constitutional rights and that it was his desire to waive such rights and proceed with his plea. (*Id.*) O'Neill confirmed that he had gone over "each and every paragraph" of his plea agreement with his attorney, and that the agreement accurately stated the agreement he had with the Government. (*Id.*, p.

MEMORANDUM DECISION AND ORDER -- 11

18.) O'Neill also verified that he had not been threatened, coerced or pressured in any way to sign the agreement. (*Id.*) During the change of plea hearing, the Court also stated, "[y]ou have agreed to waive any and all appealable rights, post-conviction writs or other defenses that you otherwise might have been able to raise except those that are specifically set forth in Part 7 of this agreement. Those are the only exceptions. Do you agree to that?" (*Id.*, p. 24.) O'Neill responded: "Yes, sir." (*Id.*) Finally, O'Neill agreed that he was entering his guilty plea voluntarily, with his own free will, and because he was, in fact, guilty as charged. (*Id.*, p. 26.)

The language of the plea agreement and the transcript from O'Neill's change of plea hearing illustrate that O'Neill's waiver was knowing, voluntary and unequivocal. During the change of plea hearing, this Court repeatedly advised O'Neill of how his plea agreement waived his appellate rights. O'Neill then repeatedly and clearly acknowledged the waiver. Further, O'Neill has not presented any facts to suggest his waiver was not knowing and voluntary. Therefore, O'Neill's § 2255 motion must be denied based upon a valid appeal and collateral attack waiver, and the Court need not further address O'Neill's claims with respect to his purported role in the offense or applicability of the firearm enhancement. *United States v. Bibler*, 495 F.3d at 624 (knowing and voluntary waiver of appellate rights precludes substantive appellate review); *United States v.*

*Anglin*, 215 F.3d at 1068 (finding defendant had no ground for appeal where appeal waiver was knowing and voluntary).

    3.  *Ineffective assistance of counsel*

O'Neill also contests his sentence on the basis of ineffective assistance of counsel, and suggests his counsel should have challenged the warrantless GPS search used in his case, citing the Supreme Court's decision in *United States v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). (2:13-cv-00352, Dkt. 6, p. 4.) In the *Jones* decision, issued nearly one year after O'Neill was sentenced, the Supreme Court held the Government's warrantless attachment of a GPS device to a vehicle, and its use of that device to monitor the vehicle's movements, constituted an unconstitutional search under the Fourth Amendment. *Id*., at 949. The *Jones* Court affirmed the lower court's reversal of a conviction because of the admission of evidence obtained through the warrantless use of a GPS device. *Id*. O'Neill contends the firearm evidence in his case would have been suppressed under *Jones*, and that his attorney was ineffective because "[h]e should have known the *Jones* decision was making its way through the courts and yet did nothing." (2:13-cv-00352, Dkt. 6, p. 4.) O'Neill also maintains "[c]ase law is replete with challenges to warrantless GPS tracking and I firmly believe my challenge would have been successful had my attorney been effective." *Id*.

The language of O'Neill's plea agreement permitted him one collateral attack on the basis of ineffective assistance of counsel where the motion was based solely

MEMORANDUM DECISION AND ORDER -- 13

on information not known to O'Neill at the time his sentence was imposed.

(2:10-cr-00160, Dkt. 138, p. 23.)  Specifically, O'Neill's plea agreement stated:

> Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed the sentence; and (2) in the exercise of reasonable discretion, the information could not have been known by the defendant at the time.

(*Id.*)

Although, as the Government notes, the use of GPS was disclosed to O'Neill during discovery and was known to him at sentencing, O'Neill did not know, and could not have known at the time he was sentenced, that the Supreme Court would ultimately invalidate warrantless GPS searches.  O'Neill's right to appeal for ineffective assistance of counsel is accordingly permissible under the language of his plea agreement.  However, a § 2255 petitioner claiming ineffective assistance of counsel must allege specific facts which, if proved, would demonstrate that (1) counsel's actions were "outside the wide range of professionally competent assistance"; *and* (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  A petitioner fails to state a claim for ineffective assistance if he fails to allege facts sufficient to meet either the "performance" or "prejudice" standard, and the district court may summarily dismiss the claim.  *Id.* at 691-92.

Here, even if O'Neill could establish a competent attorney would have challenged the use of GPS evidence (which is doubtful, given that the Supreme Court had yet to decide that the warrantless use of GPS technology constituted an unconstitutional search under the Fourth Amendment at the time of O'Neill's sentencing), he cannot meet the prejudice standard because the Ninth Circuit has held, post-*Jones*, that searches conducted in objectively reasonable reliance on binding precedent are not subject to the exclusionary rule. *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090 (9th Cir. 2012).

In *Pineda-Moreno*, the Ninth Circuit considered, in light of the Supreme Court's decision in *Jones*, whether evidence regarding the defendant's manufacture of marijuana, obtained through the DEA's warrantless use of GPS technology, should have been suppressed. In holding such evidence was not subject to the exclusionary rule, the Court reviewed binding Ninth Circuit precedent at the time the GPS search was conducted. At the time of the warrantless GPS search in *Pineda-Moreno*, "circuit precedent held that placing an electronic tracking device on the undercarriage of a car was neither a search nor seizure under the Fourth Amendment." *Id*. (citing *United States v. McIver*, 186 F.3d 1119, 1126-27 (9th Cir. 1999)). At the time, "[c]ircuit law also held that the government does not violate the Fourth Amendment when it uses an electronic tracking device to monitor the movement of a care along public roads." *Id*. (citing *United States v. Hufford*, 539 F.2d 32, 34 (9th Cir. 1976) and *United States v. Miroyan*, 577 F.2d 489, 492 (9th Cir.

1978)).  Because the DEA agents' conduct in attaching the tracking devices in public areas and monitoring them was authorized by then-binding circuit precedent, the *Pineda-Moreno* court held the critical evidence was not subject to the exclusionary rule, despite the Supreme Court's holding in *Jones*.  *Id*., at 1091.

Similarly, in this case, binding Ninth Circuit precedent at the time GPS technology was used to monitor O'Neill held such technology did not violate the Fourth Amendment.  The Supreme Court did not find the use of such technology unconstitutional until January of 2012, almost a year after O'Neill was sentenced in April of 2011, and up to two years after GPS technology was presumably used to investigate O'Neill.  The *Jones* case had not been decided when GPS searches of O'Neill occurred, and when investigators used mobile tracking devices to investigate O'Neill, "they did so in objectively reasonable reliance on then-binding precedent."  *Id*., at 1090.  As such, the evidence against O'Neill obtained through use of GPS devices is not subject to the exclusionary rule.  *Id*. at 1091.

Moreover, as the Government notes, additional evidence, such as six controlled purchases of cocaine made from O'Neill in 2009 and 2010, evidence recovered from O'Neill's trash, statements made by an informant, as well as financial evidence of O'Neill's drug trafficking activity, supplemented any evidence obtained through use of GPS tracking.  (2:10-cr-00160, Dkt. 138, pp. 7-10.)  Thus, even without the evidence obtained through use of GPS, the Government amassed enough other evidence, in good faith reliance on binding precedent, to support its

case against O'Neill. (2:10-cr-00160, PSR, pp. 4-6.)  As such, O'Neill has not established that his attorney's failure to seek suppression of GPS evidence would have resulted in a different outcome. An error by counsel "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691 (citing *United States v. Morrison*, 449 U.S. 361, 364-65 (1981)). Where, as here, a defendant cannot establish prejudice as a result of purported error by counsel, an ineffective assistance of counsel claim may be rejected as meritless without holding an evidentiary hearing. *Id*., at 700.

In sum, the Court finds that O'Neill has waived his right to file a writ of habeus regarding his leadership role and use of a firearm in connection with his underlying offense. The Court also holds that O'Neill's ineffective assistance of counsel claim is without merit. The Court must accordingly deny the motion for relief and dismiss O'Neill's petition in its entirety.

## ORDER

1. O'Neill's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (2:13-cv-00352, Dkts. 1, 7) is hereby **DENIED**.

2. The Government's Motion to Dismiss O'Neill's Petition (2:13-cv-00352, Dkt. 3) is **GRANTED**.

3. Given this Court's summary dismissal of O'Neill's § 2255 motion, O'Neill's Motion for Appointment of Counsel (2:13-cv-00352, Dkt. 8) is **DENIED** as moot.

DATED: July 1, 2014

Edward J. Lodge
United States District Judge